IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| JAMES CUMMINS, | ) | No. CV04-1028 JAJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MOTION TO AMEND** |
| | ) | **COMPLAINT AND JURY DEMAND** |
| THE ARCHDIOCESE OF DUBUQUE, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, James Cummins, and in support of his Motion to Amend Complaint and Jury Demand, states as follows:

1. Plaintiff James Cummins' lawsuit against The Archdiocese of Dubuque ("Archdiocese") was filed on June 14, 2004.

2. At the present time, this is one of 16 cases filed by the undersigned counsel against the Archdiocese involving sexual abuse committed by priests assigned with the Archdiocese between 1954 and 1979.

3. The above-captioned lawsuit was the first of these 16 cases to be filed; the most recent cases were filed as recently as June 2, 2005.

4. In this case, according to the Scheduling Order and Discovery Plan, motions to amend pleadings were due by December 20, 2004.

5. By that time, however, only very limited discovery had been completed in this case and no discovery had been completed in any other case. No depositions had been

1

taken and the undersigned counsel had only received the Archdiocese's initial responses and answers to initial discovery requests on November 30, 2004, some 20 days earlier.

6. Since that time, through investigation and discovery, the undersigned counsel has uncovered evidence that would support a claim for civil conspiracy against the Archdiocese. This evidence is incorporated into the First Amended Complaint and Jury Demand, and the claim is noted as Count VI.

7. In addition, the Plaintiff has clarified certain general factual allegations that would allow him to state with more accuracy and particularity the factual background of his injury and damages.

8. Trial is scheduled to begin February 13, 2006.

9. Plaintiff has complied with Local Rule 7.1(k). In a letter sent to counsel for the Archdiocese, on June 29, 2005, the undersigned counsel asked if the Archdiocese would voluntarily consent to the filing of an Amended Complaint and Jury Demand; however, the Archdiocese refused to so consent.

10. According to Federal Rule of Civil Procedure 15, leave to amend shall be freely given when justice so requires. In this case, no prejudice can befall the Archdiocese to allow the filing of Plaintiff's First Amended Complaint and Jury Demand. The Archdiocese has been aware of this theory of recovery since June 29, 2005. The Archdiocese will have ample time to prepare to defend against this theory at trial. Investigation and discovery are continuing in each of the 16 filed cases.

11. Pursuant to Local Rule 15.1, the original of the proposed amended and

substituted pleading is attached to this Motion, and is reproduced in its entirety therein.

FOR THESE REASONS, Plaintiff respectfully requests that the Court grant Plaintiff's Motion to Amend Complaint and Jury Demand.

Respectfully Submitted,

DUTTON, BRAUN, STAACK & HELLMAN, P.L.C
Attorneys for the Plaintiff

BY: /s/ Thomas L. Staack
    Thomas L. Staack  Iowa Bar #000005220
    LEAD COUNSEL

BY: /s/ Chad A. Swanson
    Chad A. Swanson  Iowa Bar #000014657

    3151 Brockway Road
    P.O. Box 810
    Waterloo, Iowa 50704
    (319) 234-4471
    (319) 234-8029 FAX
    staackt@wloolaw.com
    swansonc@wloolaw.com

Copy sent electronically to:

Brendan T. Quann
Davin C. Curtiss
O'Connor & Thomas, P.C.
700 Locust Street, Suite 200
P. O. Box 599
Dubuque, IA 52004-0599

I:\Lit\TLS\ABUSE-PRIEST\Cummins\Pleadings\Motion to Amend Complaint and Jury Demand.wpd

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| JAMES CUMMINS, | ) | No. CV04-1028 JAJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | **FIRST AMENDED** |
| vs. | ) | **COMPLAINT AND JURY DEMAND** |
| | ) | |
| THE ARCHDIOCESE OF DUBUQUE, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, and by and through his attorneys, Dutton, Braun, Staack & Hellman, P.L.C., and for his First Amended Complaint and Jury Demand against the Defendant, states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff, **James Cummins**, (hereinafter "Plaintiff") is a citizen and resident of the State of Texas, residing in Dallas, Texas.

2. Defendant, **The Archdiocese of Dubuque**, (hereinafter "Dubuque Archdiocese") is an Iowa Corporation with its principal place of business located at 1229 Mt. Loretta Avenue in Dubuque, Iowa.

3. The matter in controversy in this lawsuit exceeds the sum of $75,000, exclusive of interest and costs.

4. Jurisdiction in this lawsuit in federal district court is proper pursuant to 28

U.S.C. § 1332, as the matter in controversy exceeds $75,000 exclusive of interest and costs and is between citizens of different states.

5. Venue in this lawsuit in the United States District Court for the Northern District of Iowa, Cedar Rapids Division, is proper pursuant to 28 U.S.C. § 1391(a), as jurisdiction is founded only on diversity jurisdiction and the lawsuit is being brought in a judicial district where the Defendant resides.

## GENERAL ALLEGATIONS

6. Paragraphs 1 through 5 are incorporated by reference.

7. Plaintiff was a baptized and confirmed member of a parish church in the Dubuque Archdiocese, namely the Immaculate Conception parish in Cedar Rapids, Iowa. He attended catechism classes and served for many years as an alter boy and with his family, attended weekly mass.

8. From approximately 1957 to 1961, Monsignor Maurice S. Sheehy was the resident pastor at the Immaculate Conception parish in Cedar Rapids.

9. Monsignor William Anthony Roach ("William Roach") was ordained as a priest into the Roman Catholic Church in 1945, and on August 16, 1945, was assigned by the Dubuque Archdiocese to the St. Patrick's parish in Waukon, Iowa.

10. Between June 22, 1951 and October 15, 1952, William Roach was an Ecclesiastical Notary and was Secretary to Archbishop Leo Binz at the Dubuque Archdiocese chancery office in Dubuque, Iowa.

5

11. Between 1955 and 1960, William Roach was a Chancellor for the Dubuque Archdiocese.

12. Between May 28, 1958 and September 3, 1961, William Roach was the Vicar General of the Dubuque Archdiocese.

13. On September 3, 1961, following the acceptance of his resignation as Vicar General, William Roach was assigned to the Immaculate Conception parish in Cedar Rapids, Iowa.

14. William Roach was assigned to the Immaculate Conception parish from September 3, 1961 through October 3, 1967.

15. At all material times, William Roach was an ordained Roman Catholic priest.

16. At all material times, William Roach was under the authority, direct supervision, employ and control of the Dubuque Archdiocese, and was acting with the scope of his representative employment and/or agency.

17. At all material times, Father John Peters was an ordained Roman Catholic priest, and was assigned to the parish at Harpers Ferry.

18. At all material times, John Peters was under the authority, direct supervision, employ and control of the Dubuque Archdiocese, and was acting with the scope of his representative employment and/or agency.

19. In the summer of 1962, in or near McGregor, Iowa, John Peters perpetrated an assault and sexual abuse and/or attempted sexual abuse of the Plaintiff.

20. At that same time and place, William Roach perpetrated an assault and

6

sexual abuse and/or attempted sexual abuse of James Paddock.

21. Later in the summer of 1962, the Plaintiff was with William Roach alone in a town within 50 miles of Cedar Rapids. At that time and place, William Roach and another unidentified Roman Catholic priest from the Dubuque Archdiocese participated in an assault and sexual abuse and/or attempted sexual abuse of the Plaintiff.

22. Plaintiff was 17 years old at the time these acts occurred.

23. At all material times, each identified and unidentified priest referred to in this Complaint and Jury Demand were under the authority, direct supervision, employ and control of the Dubuque Archdiocese, and were acting with the scope of their representative employment and/or agency.

24. William Roach, John Peters and the other presently unidentified priest were in positions of authority, trust, reverence and control as Roman Catholic priests, and while in such position, engaged in these described instances of harmful, illegal and immoral acts with Plaintiff.

25. After the second incident occurred, Plaintiff told his parents what happened, and Plaintiff's mother and father told Monsignor Maurice Sheehy of these incidents.

26. Plaintiff's mother and father were intent on Monsignor Maurice Sheehy notifying the Dubuque Archbishop of the incidents.

27. Despite Monsignor Sheehy being notified of the incidents, William Roach remained at Immaculate Conception in Cedar Rapids until October 3, 1967, and continued to say the Mass and remain around and in contact with altar boys, and John Peters was

7

not otherwise disciplined to Plaintiff's knowledge.

28. Before the summer of 1962 when John Peters and William Roach engaged in these described instances of conduct with the Plaintiff, the Dubuque Archdiocese (and in particular Archbishop Leo Binz, Archbishop James Byrne, and/or Chancellor Francis Dunn), either had actual knowledge of, or should have known, of their propensity to engage in acts of sexual abuse or attempted sexual abuse with minors.

29. The Dubuque Archdiocese either intentionally, recklessly, or negligently failed to take action against John Peters and William Roach before the summer of 1962, including but not limited to investigating their actions, defrocking them, reporting them to law enforcement, warning members of the Archdiocese about them, disciplining them, documenting and maintaining records of their abuse and taking all reasonable steps to insure such actions, while under the Church's authority, control and employ, would not occur.

30. The Dubuque Archdiocese either intentionally, recklessly, or negligently failed to take action against John Peters and William Roach once Monsignor Maurice Sheehy received information from Plaintiff's mother and father regarding the instances of sexual abuse, including but not limited to investigating their actions, defrocking them, reporting them to law enforcement, warning members of the Archdiocese about them, disciplining them, documenting and maintaining records of their abuse and taking all reasonable steps to insure such actions, while under the Church's authority, control and employ, would not occur again.

8

31.     Dating back as early as 1950, the Archdiocese of Dubuque (and in particular Archbishop Leo Binz and Archbishop James Byrne) was aware generally that priests assigned with the Archdiocese either were engaging in acts of sexual abuse with minor children or had the propensity to commit acts of sexual abuse against minors.

32.     By 1950, the Archdiocese was fully aware of rules and procedures adopted by the Roman Catholic Church ("Canon Law") regarding the issue of priests involved in one or more acts of sexual abuse against minors.

33.     Beyond the rules and procedures prescribed by Canon Law, the Archdiocese had no known policies or procedures in place before July 1962 to eliminate or to otherwise reduce the risk of harm to minors from priests engaging in acts of sexual abuse.

34.     Dating back as early as 1950, when it received complaints, allegations, or evidence that a priest had committed one or more acts of sexual abuse involving a minor, the Archdiocese followed a policy of private admonition of the priest and eventual reassignment somewhere else within the Archdiocese.

35.     Dating back as early as 1950, the Archdiocese followed a policy of refusing to disclose (publicly or otherwise) any information regarding priests who been found to have committed one or more acts of sexual abuse involving a minor.

36.     Dating back as early as 1950, the Archdiocese followed a policy of not informing civil or criminal authorities when it acquired information that a priest had been found to have committed one or more acts of sexual abuse involving a minor.

37.     Dating back as early as 1950, the Archdiocese followed a policy of not

9

providing counseling, support, guidance or other assistance to a minor found to have been the victim of sexual abuse committed by a priest.

38. The acts of assault, sexual abuse and/or attempted sexual abuse of the Plaintiff and the later acts of the Dubuque Archdiocese caused Plaintiff to develop various psychological coping mechanisms and symptoms of psychological and psychiatric distress and injury, including but not limited to shame, guilty, post-traumatic stress, depression, repression and disassociation. As a result, Plaintiff was unable through reasonable effort to discover both the injury and the causal relationship between the injury and the abuse perpetrated upon him until late 2003, such that any applicable statute of limitations was tolled to within two years of the filing of this lawsuit.

39. At all material times, a fiduciary relationship existed between Plaintiff and the Dubuque Archdiocese, Father Roach, John Peters, and the presently unidentified priest.

40. The Dubuque Archdiocese, William Roach and/or John Peters, individually and/or in concert with each other, took affirmative steps to fraudulently conceal the fact of these incidents, or at a minimum, remained silent and failed to act in Plaintiffs' interests when under a legal duty to do so.

41. Plaintiff diligently attempted to discover his cause of action against the Dubuque Archdiocese, but was reasonably unable to do so until late 2003, such that any applicable statute of limitations was tolled to within two years of the filing of this lawsuit.

42. At all material times, the Dubuque Archdiocese, William Roach, and/or John Peters, individually and/or in concert with each other, constituted authority figures that

10

made it such that Plaintiff cannot reasonably be charged with knowledge of the inappropriateness of the conduct at issue, such that any applicable statute of limitations was tolled to within two years of the filing of this lawsuit.

## COUNT I – ASSAULT AND BATTERY

43. Paragraphs 1 through 42 are incorporated by reference.

44. In the summer of 1962, John Peters and William Roach and one other presently unidentified priest engaged in assaults and wrongful sexual conduct and contact upon the person of the Plaintiff.

45. Plaintiff did not consent to the acts of assault and battery committed against him as described herein.

46. As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, loss of enjoyment of life, was and is permanently prevented from performing his normal daily activities and obtaining the full enjoyment of life, and has and will continue to incur expenses for medical and psychological and/or psychiatric treatment and counseling.

47. The acts of assault and battery committed by employees or agents of the Dubuque Archdiocese against the Plaintiff are a proximate cause of the injuries and damages suffered by the Plaintiff, including but not limited to past medical expenses, future medical expenses, past physical and mental pain and suffering, future physical and

11

mental pain and suffering, past loss of full mind and body, future loss of full mind and body, past lost earnings and future loss of earning capacity.

48. The acts of assault and battery committed by employees or agents of the Dubuque Archdiocese against the Plaintiff were committed willfully and recklessly and with intentional and willful disregard for the rights of the Plaintiff. Plaintiff is therefore entitled to punitive damages.

## COUNT II – CHILDHOOD SEXUAL ABUSE

49. Paragraphs 1 through 48 are incorporated by reference.

50. In the summer of 1962, John Peters and William Roach and one other presently unidentified priest engaged in unlawful sexual abuse with the person of the Plaintiff in violation of Iowa Code Section 709.1(3).

51. As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, loss of enjoyment of life, was and is permanently prevented from performing his normal daily activities and obtaining the full enjoyment of life, and has and will continue to incur expenses for medical and psychological and/or psychiatric treatment and counseling.

52. The acts of sexual abuse committed by employees or agents of the Dubuque Archdiocese against the Plaintiff are a proximate cause of the injuries and damages suffered by the Plaintiff, including but not limited to past medical expenses, future medical

12

expenses, past physical and mental pain and suffering, future physical and mental pain and suffering, past loss of full mind and body, future loss of full mind and body, past lost earnings and future loss of earning capacity.

53. The acts of sexual abuse committed by employees or agents of the Dubuque Archdiocese against the Plaintiff were committed willfully and recklessly and with intentional and willful disregard for the rights of the Plaintiff. Plaintiff is therefore entitled to punitive damages.

### COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54. Paragraphs 1 through 53 are incorporated by reference.

55. In the summer of 1962, John Peters, William Roach and one other presently unidentified priest willfully and intentionally engaged in wrongful sexual contact with the Plaintiff, then a minor.

56. Before the summer of 1962, the Dubuque Archdiocese either knew or should have known of the conduct of its employees or agents as described above, and purposefully or intentionally failed to take action against them as described herein.

57. Within a short time after the acts had occurred, the Dubuque Archdiocese had actual knowledge of the acts as described herein, and purposefully or intentionally failed to take any action.

58. The conduct of the Dubuque Archdiocese toward the Plaintiff was so outrageous as to go beyond all possible bounds or decency, and is to be regarded as

13

intolerable in a civilized community.

59. The Dubuque Archdiocese itself, and through its employees and agents, did and intended to inflict emotional distress upon the Plaintiff.

60. The outrageous conduct of the Dubuque Archdiocese itself, and through its employees and agents, was a proximate cause of severe emotional distress and damages suffered by the Plaintiff, including but not limited to past medical expenses, future medical expenses, past physical and mental pain and suffering, future physical and mental pain and suffering, past loss of full mind and body, future loss of full mind and body, past lost earnings and future loss of earning capacity.

61. As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, loss of enjoyment of life, was and is permanently prevented from performing his normal daily activities and obtaining the full enjoyment of life, and has and will continue to incur expenses for medical and psychological and/or psychiatric treatment and counseling.

62. The acts of the employees or agents of the Dubuque Archdiocese and the Dubuque Archdiocese itself toward the Plaintiff were committed willfully and recklessly and with intentional and willful disregard for the rights of the Plaintiff. Plaintiff is therefore entitled to punitive damages.

## COUNT IV – BREACH OF FIDUCIARY DUTY

63. Paragraphs 1 through 62 are incorporated by reference.

64. By holding themselves out as qualified Roman Catholic clergy, representatives of the Roman Catholic Church, priests, religious instructors, counselors and holy individuals, and by undertaking the religious instruction and spiritual and emotional counseling of Plaintiff, the Dubuque Archdiocese, John Peters, William Roach, and the presently unidentified priest entered into a fiduciary relationship with the Plaintiff.

65. The Dubuque Archdiocese itself, and by and through its employees and agents, breached their fiduciary duty to the Plaintiff by engaging in intentional, negligent and unlawful conduct described herein.

66. As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, loss of enjoyment of life, was and is permanently prevented from performing his normal daily activities and obtaining the full enjoyment of life, and has and will continue to incur expenses for medical and psychological and/or psychiatric treatment and counseling; his damages include but are not limited to past medical expenses, future medical expenses, past physical and mental pain and suffering, future physical and mental pain and suffering, past loss of full mind and body, future loss of full mind and body, past lost earnings and future loss of earning capacity.

67. The acts of the employees or agents of the Dubuque Archdiocese and the

15

Dubuque Archdiocese itself toward the Plaintiff were committed willfully and recklessly and with intentional and willful disregard for the rights of the Plaintiff. Plaintiff is therefore entitled to punitive damages.

### COUNT V – NEGLIGENT HIRING, SUPERVISING, WARNING, DOCUMENTING, AND/OR RETAINING BY DEFENDANT DIOCESE

68. Paragraphs 1 through 67 are incorporated by reference.

69. By the summer of 1962, the Archdiocese of Dubuque, by and through their agents, servants and employees, knew, or should have known, of the propensity of John Peters and/or William Roach to commit unlawful acts of sexual abuse against minor children.

70. The Archdiocese of Dubuque had a duty to exercise reasonable care in the hiring, supervising, documenting and retaining of John Peters and William Roach and the one presently unidentified priest, and to use reasonable care to provide adequate warning to the Plaintiff, his family and the parishoners of the harmful and unlawful conduct of these individuals.

71. The Archdiocese of Dubuque failed to properly exercise its duty of reasonable care regarding John Peters, William Roach, and the presently unidentified priest under the circumstances, as it related to their hiring, their supervision, documentation regarding their conduct, and their retention.

72. The conduct of the Dubuque Archdiocese, as described in the preceding

paragraphs herein, was a proximate cause of injury and damages sustained by the Plaintiff, including but not limited to past medical expenses, future medical expenses, past physical and mental pain and suffering, future physical and mental pain and suffering, past loss of full mind and body, future loss of full mind and body, past lost earnings and future loss of earning capacity.

73. As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, loss of enjoyment of life, was and is permanently prevented from performing his normal daily activities and obtaining the full enjoyment of life, and has and will continue to incur expenses for medical and psychological and/or psychiatric treatment and counseling.

74. The acts of the employees or agents of the Dubuque Archdiocese and the Dubuque Archdiocese itself toward the Plaintiff were committed willfully and recklessly and with intentional and willful disregard for the rights of the Plaintiff. Plaintiff is therefore entitled to punitive damages.

## COUNT VI – CIVIL CONSPIRACY

75. Paragraphs 1 through 74 are incorporated by reference.

76. John Peters and William Roach committed the wrong of sexual abuse against the Plaintiff as described herein.

77. The Dubuque Archdiocese participated in a conspiracy with John Peters,

17

William Roach, and/or Maurice Sheehy to fraudulently conceal from Plaintiff and his family the nature and extent of their knowledge before the summer of 1962 of the propensity of John Peters and/or William Roach to sexually abuse young boys.

78. In the alternative, the Dubuque Archdiocese gave substantial assistance or encouragement to John Peters and William Roach in the commission of their acts of sexual abuse, including the acts of sexual abuse involving the Plaintiff.

79. The conduct of the Dubuque Archdiocese, as described in the preceding paragraphs herein, has resulted in injury and damages sustained by the Plaintiff, including but not limited to past physical and mental pain and suffering, future physical and mental pain and suffering, past loss of full mind and body, future loss of full mind and body, past and future expenses for psychiatric and psychological treatment and counseling, past lost wages and future loss of earning capacity.

80. The act or acts or conspiracy and/or aiding and abetting committed by the Dubuque Archdiocese toward the person of the Plaintiff was committed willfully and recklessly and with intentional and willful disregard for the rights of the Plaintiff. Plaintiff is therefore entitled to punitive damages.

FOR THESE REASONS, Plaintiff prays for judgment against Defendant in an amount that is fair and reasonable to compensate him for his damages as described herein, together will punitive damages, costs and interest as allowed by law, plus any other relief that the Court deems just and equitable.

Respectfully Submitted,

DUTTON, BRAUN, STAACK & HELLMAN, P.L.C
Attorneys for the Plaintiff

BY: /s/ Thomas L. Staack
     Thomas L. Staack  Iowa Bar #000005220
     LEAD COUNSEL

BY: /s/ Chad A. Swanson
     Chad A. Swanson  Iowa Bar #000014657

     3151 Brockway Road
     P.O. Box 810
     Waterloo, Iowa 50704
     (319) 234-4471
     (319) 234-8029 FAX
     staackt@wloolaw.com
     swansonc@wloolaw.com

Copy electronically sent to:

Brendan Quann
O'Connor & Thomas, P.C.
700 Locust Street
Suite 200
Dubuque, Iowa 52001-6874

I:\Lit\TLS\ABUSE-PRIEST\Cummins\Pleadings\Motion to Amend Complaint and Jury Demand.wpd