IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| JAMES CUMMINS, | No. CV04-1028 JAJ |
| Plaintiff, | |
| vs. | **PLAINTIFF'S REPLY TO RESISTANCE TO MOTION TO COMPEL DISCOVERY** |
| THE ARCHDIOCESE OF DUBUQUE, | |
| Defendant. | |

Plaintiff states as follows in support of his Motion to Compel Discovery and in reply to the Resistance filed by Defendant, the Archdiocese of Dubuque ("Archdiocese"):

## I. Documents regarding Patnode are discoverable.

Parties in litigation may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

1

All discovery is subject to the limitations imposed by Rule 26(b)(2)(I), (ii), and (iii).[1] See Fed. R. Civ. P. 26(b)(1).

The Archdiocese argues that documents regarding Patnode incidents, all of which apparently occurred during the 1940s, are not relevant nor reasonably calculated to lead to the discovery of admissible evidence. See Archdiocese Brief, p. 3. Plaintiff disagrees. In his resistance to the Motion for Summary Judgment, Plaintiff included an affidavit from a Patnode victim, Melvin Loes. In that affidavit, Mr. Loes testified that an adult acquaintance of his told him in 1951 that Patnode had been sexually abusing his children. Mr. Loes encouraged this man to go to the Archbishop and tell him about the situation. Not long after that visit, this man and another man went to either Archbishop Henry Rohlman or Co-Adjutor Leo Binz and did in fact inform Rohlman and/or Binz about Patnode sexually abusing young boys.[2] Very shortly after that report, Patnode was transferred from St. Joseph's to a convent in Marion called Our Lady of Mercy Novitiate. It is undisputed that Leo Binz was Co-Adjutor and Archbishop of Dubuque between 1949 and 1961.

---

[1] These rules indicate that the discovery must not be unreasonably cumulative or duplicative, the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought, and the burden or expense of the proposed discovery must not outweigh its likely benefit.

[2] The Archdiocese states in its Brief that it had no knowledge "of the misconduct of Father Patnode until the first complaint about Father Patnode was reported in August, 2002". See Brief, p. 3. Of course, this assertion is wrong, since it ignores the sworn testimony of Melvin Loes from his affidavit.

2

The Patnode history is relevant, and indeed, critical to the case being brought by Jim Cummins because part of his evidentiary obligation at trial will be to explain to the jury what the Archdiocese knew about members of its priesthood engaging in sexual abuse of minors and when they knew it. One claim advanced by Plaintiff against the Archdiocese is for negligent retention and supervision. See Doe v. Hartz, 52 F.Supp.2d 1027 (N.D. Iowa 1999); see also Godar v. Edwards, 588 N.W.2d 701 (Iowa 1999). Other claims advanced by Plaintiff against the Archdiocese include intentional infliction of emotional distress, breach of fiduciary duty and civil conspiracy. Overriding these claims is a claim for punitive or exemplary damages under Iowa Code Chapter 668A based upon the conduct of the Archdiocese constituting a willful and wanton disregard for the rights or safety of another.

Simply put, the awareness on the part of the Archdiocese of the issue of its priests engaging in sexual abuse of minors and others before July 1962 is directly relevant to the scope of its duty to Jim Cummins and the breach of that duty with respect to John Peters and William Roach. Plaintiff does not allege that Patnode sexually abused him, but that is not and should not be the litmus test for discoverability here.

In order for the trier of fact in Plaintiff's claim to put Jim Cummins' sexual abuse by John Peters and William Roach in its proper context, they must understand the history of sexual abuse within the Archdiocese before July 1962. The trier of fact must first determine whether one or more priests assigned to the Archdiocese were sexually abusing minors or others before July 1962. The trier of fact must next determine whether

3

reports of such sexual abuse were made to the Archdiocese before July 1962. The trier of fact must then decide how the Archdiocese responded when reports of sexual abuse came to their attention. There is already significant evidence in the record in this case that the Archdiocese engaged in purposeful conduct to conceal reports of sexual abuse, to keep such instances from the appropriate civil authorities, and to solve the "problem" by transferring the offending priest. On its face, a reasonable fact finder could find such conduct to constitute willful and wanton behavior.

Reconstructing the knowledge of the Archdiocese in the 1950s and 1960s with respect to the issue of sexual abuse committed by its priests is not a simple task. Many of the individuals involved are now deceased. Without the cooperation of the Archdiocese, Plaintiff has attempted to reconstruct this knowledge through other means. Primary among these means is the collection of Archdiocesan documents related to priests known to have engaged in sexual abuse before July 1962. Patnode fits this category precisely. Plaintiff has narrowly tailored his document requests to be sensitive to any possible privacy rights of other victims, and has already agreed to receive documents in such a way as to maintain the confidentiality of any victim's name identified in such documents.

## II. The Patnode documents are not privileged from discovery.

In addition to arguing that the requested documents are outside the bounds of discovery, the Archdiocese argues that the documents are privileged. The Archdiocese proffers two reasons to support this argument. Each will be addressed in turn.

4

## A. The First Amendment of the United States Constitution and Article I, Section 3 of the Iowa Constitution.

The Archdiocese begins by asserting a privilege based upon the Establishment Clause found in both the United States and Iowa Constitutions. For the reasons that follow, this argument is without merit.

It is important to note that the case at issue is **not** an ecclesiastical matter, and in turn, the discovery of relevant documents from the Archdiocese relating to this case is not an ecclesiastical matter. The pending Complaint is a civil proceeding brought by the Plaintiff against the Archdiocese for money damages based upon conduct that this Court has previously determined to be within the authority of the federal civil court to resolve. See Doe v. Hartz, 52 F.Supp.2d 1027 (N.D. Iowa 1999).

In Iowa, the Establishment Clause has engendered the general rule that civil courts will not interfere in purely ecclesiastical matters, including membership in a church organization or church discipline. Marks v. Estate of Hartgerink, 528 N.W.2d 539, 544 (Iowa 1995). Iowa's civil courts have a long tradition of refraining from interfering in purely ecclesiastical matters. Marks, 528 N.W.2d at 544; see also Holmstrom v. Sir, 590 N.W.2d 538, 540 (Iowa 1999)("[c]ivil courts are precluded by the first amendment from deciding doctrinal issues"). This includes membership in a church organization or church discipline:

> [O]rdinarily the courts have no jurisdiction over, and no concern with, purely ecclesiastical questions and controversies, including membership in a church organization, **but they do have jurisdiction as to civil...rights which are involved in or arise from a church controversy.**

Holmstrom, 590 N.W.2d at 540 (emphasis added)(quoting Brown v. Mt. Olive Baptist

5

Church, 124 N.W.2d 445, 446 (Iowa 1963)); see also Kliebenstein v. Iowa Conference of the United Methodist Church, 663 N.W.2d 404, 406 (Iowa 2003).

This is **not** a case involving church membership or church discipline, nor is it a case involving doctrinal issues of the Roman Catholic Church or this Archdiocese. More specifically, the production of the requested documents relates to Plaintiff's civil rights to maintain a civil action against the Archdiocese for money damages – which is a type of case that has been held does not run afoul of the Establishment Clause.

Similarly, the Archdiocese's reference to Canon Law does not and cannot insulate the Archdiocese from the requirement to disclose these relevant documents. Nothing regarding the Patnode documents as described by the Archdiocese would declare the documents as a whole to be "confidential" in any way that might cause this Court to even consider the Establishment Clause. While Canon Law may be a source of rules and regulations for the internal discipline and government of the Roman Catholic Church, it is not the source of law for discovery of relevant evidence involving a civil matter that the federal court **can** adjudicate. In other words, even if the Archdiocese were to declare a document to be "confidential" under its own internal operating rule, the Establishment Clause in this circumstance would not prohibit a civil court from declaring that same document to be discoverable in an otherwise permissible civil action brought against the Archdiocese. Were the Court to declare otherwise, then the Archdiocese could use the Establishment Clause to circumvent the Court's own authority over the discovery process in every case simply by declaring documents to be "privileged." Simply put, there is no

statute, regulation or case that recognizes a privacy right under Canon Law in the Iowa civil courts. See Roman Catholic Church of Jackson v. Morrison, 905 So.2d 1213, 1247 (Miss. 2005)("this court has never recognized a privilege under the First Amendment to refuse to produce religious-oriented documents. We decline to do so today"); see also Roman Catholic Archbishop of Los Angeles v. Superior Court, 32 Cal.Rptr.3d 209, 219-224 (Cal. App. 2005).

### B.　Iowa Code section 622.10.

In addition to citing the Establishment Clause found in both the United States and Iowa Constitutions as a basis for a privilege from discovery, the Archdiocese also cites to Iowa Code section 622.10. For the reasons that follow, this argument is also without merit.

The decision of whether a communication is privileged under Iowa Code section 622.10 is within the sound discretion of the trial court. State v. Burkett, 357 N.W.2d 632, 637 (Iowa 1984). A portion of Iowa Code section 622.10 contains a codification of the "priest-penitent privilege."

There are a number of conditions which must be met before this privilege is allowed:

(1)　That the statements are made in the usual course of the discipline;

(2)　That the person claiming the privilege is allowed by the statute to claim it;

(3)　That the communication was secret; and

(4)　That the statements be penitential in character and made by the penitent.

Cimijotti v. Paulsen, 219 F.Supp. 621, 624 (N.D. Iowa 1963). The communications

protected are limited to such as are penitential in their character, or are made to clergymen in obedience to some supposed religious duty or obligation. Cimijotti, 219 F.Supp. at 625; see also State v. Richmond, 590 N.W.2d 33, 34-35 (Iowa 1999).

On the face of the resistance submitted by the Archdiocese, there is no indication that any priest-penitent privilege can be asserted here by the Archdiocese. Indeed, in its supplemental response to request for production number 57, the Archdiocese indicates that the requested and identified documents were filed with the Office for Protection of Children between January 30, 2003 and February 28, 2005. The Director of the Office for Protection of Children is Joyce Connors, who is not a priest. Under the auspices of that Office, victims of past abuse have been encouraged to report allegations to Victim Assistance Coordinators, who are not priests. See Exhibits A and B, attached.

The Archdiocese argues broadly in its Brief that Iowa Code section 622.10 provides privilege protection to communications *between* priests as well as communications between lay people and clergy members. See Brief, pp. 6-7. Without the benefit of actually seeing the documents, it is difficult for the Plaintiff to envision exactly what the Archdiocese is referring to here, since elsewhere, the Archdiocese has indicated that these documents were forwarded to its counsel from the Office for Protection of Children. Suffice here to indicate that the priest-penitent privilege codified in Iowa Code section 622.10 is narrowly drafted and has similarly been narrowly construed by the Iowa courts, and there is absolutely no law in Iowa that would protect intra-clergy communications as the Archdiocese would lead the Court to believe. The Plaintiff understands that the

documents date from 2003 to 2005, relate to sexual abuse from the 1940s, and were compiled by an office within the Archdiocese that is led by a person who is a not a priest or a member of the clergy. Under such a scenario, Iowa Code section 622.10 simply does not apply. The Plaintiff urges the Court to conduct a careful review of the in camera documents and reach a similar conclusion.

FOR THESE REASONS, Plaintiff James Cummins respectfully requests that the Court enter an Order granting his motion to compel as stated herein, and for such other relief as the Court deems just and equitable under the circumstances

Respectfully Submitted,
DUTTON, BRAUN, STAACK & HELLMAN, P.L.C
Attorneys for the Plaintiff

BY: *Thomas L. Staack* /s/CAS
Thomas L. Staack Iowa Bar #000005220
LEAD COUNSEL

BY: *Chad A. Swanson*
Chad A. Swanson Iowa Bar #000014657

3151 Brockway Road
P.O. Box 810
Waterloo, Iowa 50704
(319) 234-4471
(319) 234-8029 FAX
staackt@wloolaw.com
swansonc@wloolaw.com

# ASSISTANCE FOR VICTIMS OF SEXUAL ABUSE

By means of this notice, the Roman Catholic Archdiocese of Dubuque wishes to make more widely known its program for assistance to people who were/are childhood victims of sexual abuse by clergy or other Church personnel. The program provides the services of Victim Assistance Coordinators and was established in response to the archdiocese's new "Policy for the Protection of Minors," made public on June 13, 2003.

The program is staffed by three Victim Assistance Coordinators (VACs). They are Dr. Thomas Anderegg, Joan Hoffmann and Maureen Oates. These individuals possess advanced degrees — one has a doctorate and the other two have master's degrees. All have received training in matters related to sexual abuse and intervention with victims of abuse. Each has pastoral experience. The VACs are not employees of the archdiocese but are under contract to the Archdiocese of Dubuque to provide the services.

The function of the VACs is to provide a pastoral presence to victims and their families. They will receive allegations of abuse, make a report to civil authorities, and facilitate assistance for the victim. The services provided by the VACs may also include referral for professional mental health services, referral to social service agencies or support groups, and/or referral for spiritual care.

The focus of the program is the emotional and spiritual well-being and healing of those affected by the sexual misconduct of clergy and other personnel of the archdiocese.

**Allegations of current and past abuse may be made by calling Dr. Thomas Anderegg (563-556-1225) or toll-free: Joan Hoffmann (866-319-4636) or Maureen Oates (800-803-6758).**

Allegations of abuse may also be made to civil authorities, or the Iowa Child Abuse Reporting line (800-362-2178) or the Archdiocese of Dubuque at 800-876-3546.



ARCHDIOCESE OF DUBUQUE

PLAINTIFF'S EXHIBIT
FRIEND'S
A

# Archdiocese of Dubuque

# Policy for the Protection of Minors

The following Policy for the Protection of Minors was developed by the Archdiocese of Dubuque Review Board for the Protection of Minors.

This policy fulfills the requirements of the Charter for the Protection of Minors and Young People adopted in June 2002 by the United States Conference of Catholic Bishops and is in compliance with the Essential Norms for Diocesan/Eparchial Policies Dealing with Allegations of Sexual Abuse of Minors by Priests and Deacons approved in November 2002.

This policy was studied, discussed, and recommended for approval by the Archdiocesan Pastoral Council, the Archdiocesan Priests Council, the Diaconal Community Council, and the Archdiocesan Board of Education.

Review Board Members:

- Mr. James Anastasi, Mason City
- James Bradley, Clear Lake
- Ms. Christine OConnell Corken, Dubuque
- Dr. Thomas Feld, Marion
- Ms. Kathy Loch Klein, Dubuque
- Ms. Janet Mead, Marshalltown
- Ms. Mary Nauman, Dubuque
- Rev. Dr. James Nieman, Dubuque
- Sister Susan OConnor, Cedar Rapids
- Rev. Thomas E. Toale, Ph.D., Temple Hill
- Rev. Msgr. David A. Wheeler, Dubuque
- Dr. Barbara Sullivan Woodward, Dubuque


PLAINTIFF'S EXHIBIT B

# Archdiocese of Dubuque
## Policy for the Protection of Minors

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | Preface | 3 |
| II. | History | 4 |
| III. | Definition of Sexual Abuse | 5 |
| IV. | Prevention and Education | 5 |
| V. | Reports of Abuse | 6 |
| VI. | Investigation | 7 |
| VII. | Responsibility | 8 |
|  | A. Archdiocese Responsibilities | 8 |
|  | B. Review Board Responsibilities | 10 |
|  | C. Victim Assistance Coordinator Responsibilities | 11 |
|  | D. Faith Community Responsibilities | 11 |
| Footnotes |  | 11 |

### Appendices

| Appendix A | Scope of Application | 13 |
| Appendix B | Reporting Form | 14 |
| Appendix C | Victim Assistance Coordinator | 15 |
| Appendix D | Review Board | 17 |
| Appendix E | Allegation Procedures for Priests and Deacons | 19 |
| Appendix F | Iowa Code | 22 |

C. An educational program, including a segment dealing with sexual abuse, will be required at the time of employment and updated no less than every five years for personnel of the Archdiocese and Archdiocesan entities. The segment will include information concerning: signs and symptoms, dynamics of sexual abuse, impact of sexual abuse, intervention strategies, reporting requirements, and community resources. This program will be offered at a parish level when feasible.

D. Catholic schools and religious education programs are to develop and incorporate sexual abuse of minors prevention curricula into the educational programs for early childhood through grade 12. The curricula reflecting the best current practices will be used and reviewed at least every three years by the Office of Educational Services.

E. The Archdiocese will establish safe environment programs. It will cooperate with parents, civil authorities, educators, and community organizations to provide education and training for children, youth, parents, ministers, educators, and others about ways to make and maintain a safe environment for children. The Archdiocese will make clear to all personnel (as defined in Appendix A) the standards of conduct for persons in positions of trust with regard to sexual abuse.

F. All personnel charged with implementation of sexual abuse prevention curricula will be approved by the Archdiocese. For personnel working in educational programs, the Office of Educational Services, in collaboration with experts and other offices and agencies, will coordinate training and certification in accord with the provisions of civil law.

G. Annually, the Archdiocese shall offer to its personnel a training program about prevention and recognition of sexual abuse.

H. The Archdiocese will provide the mechanisms for handling all inquiries about resources related to the sexual abuse of minors. The Archdiocese shall also maintain a library of educational, prevention, and informational materials that shall include: training materials and curricula; lists of support groups, programs, and agencies that work with abuse of minors; informational material about the use of mental health resources; and lists of mental health professionals with experience in treating victims of sexual abuse.

I. The procedures for reporting allegations of abuse will be readily available in printed form and will be the subject of periodic public announcements.

V. **Reports of Abuse**

All cases of alleged, suspected, or known sexual abuse of a minor committed by any personnel of the Archdiocese and Archdiocesan entities while acting in their capacity as personnel of the Archdiocese and Archdiocesan entities must be immediately reported according to the following procedures.

   A. All personnel are obligated to report such abuse to their immediate supervisor, who then will immediately report the alleged abuse to the Director of the Office for the Protection of Children, who will also inform the Vicar General and/or Superintendent of Schools as appropriate. Personnel who are mandatory reporters must report the alleged abuse directly to civil authorities, as well as their immediate supervisor. Other personnel may make reports to civil authorities.

   B. A report must be made to the civil authorities by the Director of the Office for the Protection of Children (if not previously reported) without preliminary screening, investigation, or legal judgment by the Archdiocese, except as provided in Section E (below).

   C. Civil authorities include, but are not limited to, Police, Sheriff, Department of Human Services, and County Attorney.

   D. The duty of personnel to report applies to all allegations regardless of when the alleged abuse was said to have occurred. The obligation to report allegations of abuse to civil authorities will hold regardless of the statute of limitations, except

as provided in section E (below).

E. A report to civil authorities will not be made only if the following three conditions are met: an adult reports that he or she was sexually abused as a minor by Church personnel, the statute of limitations has expired, and the individual signs a request within thirty days that the case not be reported to civil authorities. This does not preclude a Church investigation from proceeding.

F. The Archdiocese of Dubuque will not tolerate retaliatory acts of any nature against persons who in good faith make reports and provide information implementing these policies.

G. All reports of alleged abuse are to be documented on the form in Appendix B by the person receiving the allegation. Reports are to be sent immediately to the Director of the Office for the Protection of Children.

H. Allegations of sexual abuse of a minor by Archdiocesan personnel will also be immediately reported by the Director of the Office for the Protection of Children to the Chair of the Review Board and the Victim Assistance Coordinator. Notification to an Archdiocesan official will not be reason to delay notification to civil authorities. The Archdiocese will make immediate provisions for supervision and protection of minors. If a minors safety or life is imminently threatened, local law enforcement will be contacted immediately.

I. Nothing in this policy is meant to jeopardize the Seal of Confession.

## VI. Investigation

The purpose of the Archdiocesan investigation is to discover the facts of an allegation and to promote justice, healing, and reconciliation when abuse has occurred.

A. The Archdiocese shall retain an investigator, with professional training and experience in the investigation of sex crimes and/or child abuse. The investigator shall be compensated by and under contract with the Archdiocese.

B. The investigator will be notified by the Vicar General or Superintendent of Schools of the complaint as soon as possible. The investigator will begin the investigation that is to be coordinated with and concurrent to any criminal investigation without pre-empting or interfering with any criminal investigation. To the extent possible, the investigator will secure information found in the public record from law enforcement officials to avoid duplication of investigations.

C. The Archdiocese will cooperate fully with the investigator. Investigations will be handled with due regard for confidentiality and privacy.

D. The accused will be informed immediately of the allegation against him/her unless such notification interferes with criminal investigations. In such cases, notification will be made following authorization from law enforcement officials. The Vicar General or Superintendent of Schools is responsible for notification of the accused.

E. This investigation is to include, whenever possible, interviews with the alleged victim, the victims parents or guardian, the person making the initial report, the accused person, and any other person who may have knowledge of the incident. In the case of a criminal investigation, some of this information may be obtained from public record.

F. The investigator will submit a progress report to the Archbishop within two weeks